Lindsay S. Feuer, Esq.
Jaspan Schlesinger LLP
300 Garden City Plaza
Garden City, New York 11530
Telephone: (516) 393-8206
lfeuer@jaspanllp.com
*Attorneys for Valley National Bank, as*
*successor by merger to State Bank of Long Island*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re:                                                            Chapter 7

    GIULIANO BOTTICELLI AND                    Case No. 8-13-70167-dte
    ASSUNTINA BOTTICELLI,

       Debtors.

--------------------------------------------------------X
VALLEY NATIONAL BANK, AS
SUCCESSOR BY MERGER TO
STATE BANK OF LONG ISLAND

       Plaintiff,
                                   Adv.Pro.No. _____

   - against -

GIULIANO BOTTICELLI AND
ASSUNTINA BOTTICELLI,

       Defendants.
--------------------------------------------------------X

## COMPLAINT

    Plaintiff, VALLEY NATIONAL BANK, AS SUCCESSOR BY MERGER TO STATE

BANK OF LONG ISLAND ("**Plaintiff**" or "**VNB**"), by its attorneys, JASPAN SCHLESINGER

LLP, as and for its Complaint against the defendants, GIULIANO BOTTICELLI and

ASSUNTINA BOTTICELLI (the "**Debtors**"), sets forth and alleges as follows:

## NATURE OF THE ACTION

1.    This action seeks an exception to discharge and dischargability pursuant to 11 U.S.C. § 727(a)(2), (3), and (4), 11 U.S.C. § 523(a)(2)(A) and (B) and Bankruptcy Rules 4007 and 7001.

## PROCEDURAL HISTORY

2.    On January 14, 2013 ("**Petition Date**"), the debtors, Giuliano Botticelli and Assuntina Botticelli (collectively, the "**Debtors**"), filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code ("**Code**").

3.    On May 1, 2013, an Order was granted permitting VNB to conduct a Rule 2004 Examination of the Debtors (the "**Order**").

4.    In accordance with the Order, VNB conducted Rule 2004 Examinations of the Debtors on June 12, 2013 and June 13, 2013.

5.    The question of the Debtors' discharge has not been determined as of this date.

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. §§157 and 1334.

7.    This adversary proceeding is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and (J).

8.    Venue of this adversary proceeding in this district is proper pursuant to 28 U.S.C. §1409(a).

9.    Upon information and belief, the Debtors reside at 1 Wakefield Drive, Glen Head, New York, within the Eastern District of New York.

## FACTS COMMON TO ALL CAUSES OF ACTION

10.     The Plaintiff repeats and realleges each and every allegation contained in the paragraphs of this Complaint marked and numbered "1" through "9" as if set forth herein at length.

11.     VNB is a creditor of the Debtors and is owed in excess of $1,304,436.18 pursuant to a money judgment dated May 8, 2012, and filed in the Nassau County Clerk's Office on May 21, 2012 (the "**Judgment**"). A copy of the Judgment is annexed hereto as Exhibit A.

12.     The Judgment was obtained based on the Debtors' default under certain Guarantees (the "**Guarantees**") relating to a Promissory Note in the principal amount of $925,000.00, dated October 31, 2009 (the "**Note**") made by Botticelli Builders LLC to State Bank of Long Island.

13.     One of the Guarantees was executed by Giuliano Botticelli ("**Giuliano**") on behalf of Jericho Plaza LLC ("**JP**"), as security for the Note ("**JP Guarantee**").

14.     As of the Petition Date, the Debtors are personally liable to VNB in the amount of $1,304,436.18, plus interest at the judgment rate (the "**Debt**").

15.     In or around the end of 2008 to early 2009, the Debtors provided VNB with financial statements and made representations as to their assets in order to obtain the Note.

16.     Giuliano had a twenty five percent (25%) membership interest in JP.  Such interest is reflected in the JP's Operating Agreement, dated August 30, 2000 ("**Operating Agreement**") a copy of which is annexed hereto as Exhibit B.

17.     Giuliano's father, Antonio Botticelli ("**Antonio**"), had a twenty five percent (25%) membership interest in JP.  *See* Exhibit B at 4.

18.     Giuliano's mother-in-law, Silvia Cerrone ("**Silvia**"), had a fifty percent (50%)

membership interest in JP. *See* Exhibit B at 4.

19.     Giuliano and Antonio transferred their membership interests in JP to Silvia in or around July 2012 pursuant to Assignments of Interest in JP (collectively, the "**Assignments**") for one (1) dollar of consideration. Copies of the Assignments are annexed hereto as Exhibit C.

20.     Upon information and belief, JP owns or owned real property located at 280 or 282 Woodbury Road, Woodbury, New York ("**Woodbury Property**").

21.     Upon information and belief, Brian Lux ("**Lux**") is the owner and holder of a Mortgage Note dated April 27, 2005 in the principal amount of $300,000.00 and secured by the Woodbury Property ("**Lux Mortgage**"), which was given to JP to secure a down payment of the Woodbury Property. A copy of the Lux Mortgage is annexed hereto as Exhibit D.

22.     Upon information and belief, Lux and JP entered into a Contract of Sale dated April 27, 2005 ("**Contract of Sale**"), whereby Lux agreed to purchase the Woodbury Property for $1,350,000.00 conditioned on, amongst other things, JP erecting and completing a one family dwelling on the Woodbury Property. A copy of the Contract of Sale is annexed hereto as Exhibit E.

23.     Upon information and belief, pursuant to a Sole Member's Consent to Borrow & Mortgage, 334 Corp. and Stanley Gallant ("**334 & Gallant Mortgage**") are the owners and holders of a mortgage dated on or around October 1, 2007 in the principal amount of $600,000.00 secured by the Woodbury Property. A copy of the 334 & Gallant Mortgage is annexed hereto as Exhibit F.

24.     In or around 2009, Giuliano represented to VNB that construction of the Woodbury Property was almost complete and that he would receive approximately $400,000.00 to $500,000.00 from the sale of the Woodbury Property.

25.    Upon information and belief, to date, the Woodbury Property has not yet been sold or transferred to Lux.

26.    Upon information and belief, construction of the Woodbury Property has not been completed.

27.    Upon information and belief, the Debtors have or had an interest in 1st Avenue NHP Associates LLC, 214 Jericho Turnpike LLC, 336 Depot Pizza, 881 Jericho Pizza LLC, Botticelli Builders LLC, Botticelli Jericho Associates, LLC, Botticelli Plainfield Associates LLC, Caveat Emptor, LLC, First Triad Corp., JP, Louis Brooklyn Pizza LLC, Mia Bella Pizza LLC, NHPI LLC, and North Star Construction Corp. (collectively, the "**Entities**").

28.    Upon information and belief, the Debtors had an ownership interest in the New Hyde Park Inn (the "**Inn**").

29.    Upon information and belief, in or around the end of 2008 to early 2009, Giuliano represented to VNB that the Inn had a positive cash flow.

30.    On or around March 2010, New Hyde Park Real Estate, LLC ("**NHPRE**") made, executed, and delivered to Giuliano, a promissory note in the original principal amount of $750,000.00, which was to mature in July 2016 ("**NHPRE Note**").

31.    Upon information and belief, on May 18, 2012, within one year of the Petition Date, Giuliano agreed to accept $250,000.00 as payment in full of the NHPRE Note, which had a remaining principal balance of $500,000.00.

## AS AND FOR A FIRST CAUSE OF ACTION

32.    The Plaintiff repeats and realleges each and every allegation contained in the paragraphs of this Complaint numbered "1" through "31" as if set forth herein at length.

33.    Upon information and belief, Giuliano transferred his interest in JP within one

year of the Petition Date with the intent to hinder, delay, or defraud VNB and its creditors.

34.    Such transfer was made for one (1) dollar of consideration and was made to a member of the Debtors' family.

35.    Additionally, such transfer was made a mere two (2) months after the Judgment was entered against the Debtors.

36.    Upon information and belief, the Debtors' interest in JP and the Woodbury Property was property of the estate that was transferred within one year of the Petition Date with the intent to hinder, delay, or defraud VNB and other creditors.

37.    Upon information and belief, Giuliano agreed to accept $250,000.00, half of what Giuliano was owed, as payment in full on the NHPRE Note, within one year of the Petition Date with the intent to hinder, delay, or defraud VNB and other creditors.

38.    Upon information and belief, accepting half of the amount that Giuliano was owed under the NHPRE Note was insufficient consideration.

39.    Such agreement was entered into ten (10) days after the Judgment was signed and a mere three (3) days before the Judgment was entered against the Debtors.

40.    Upon information and belief, Giuliano's rights under the NHPRE Note are property of the estate that was transferred within one year of the Petition Date with the intent to hinder, delay, or defraud VNB and other creditors.

41.    Therefore, the Debtors should be denied a discharge pursuant to 11 U.S.C. § 727(a)(2).

## AS AND FOR A SECOND CAUSE OF ACTION

42.    The Plaintiff repeats and realleges each and every allegation contained in the paragraphs of this Complaint numbered "1" through "41" as if set forth herein at length.

43.     Upon information and belief, the Debtors currently hold or previously held ownership interests in the Entities.

44.     Upon information and belief, the Debtors have concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information, including books, documents, records, and/or papers relating to the various Entities, and the Debtors' interests therein.

45.     Upon information and belief, such information is relevant to ascertain the Debtors' financial condition and/or business transactions.

46.     Within the Debtors' bankruptcy schedules, the Debtors alleged that their interest in several of the Entities were either "sold" or "closed" prior to the Petition Date, however, the Debtors have not provided sufficient documentation to corroborate this statement.

47.     Upon information and belief, the Debtors have either concealed, destroyed, mutilated, falsified, or failed to keep or preserve recorded information regarding these Entities, from which the Debtors' financial condition or business transactions might be ascertained.

48.     Upon information and belief, Giuliano falsified JP's tax returns.

49.     Annexed hereto as Exhibit G are copies of the relevant portions of JP's tax returns filed for 2008, 2009, 2010, and 2011 (collectively, the "**Tax Returns**").[1]

50.     Giuliano's ownership interest in JP, as set forth in the Tax Returns, is inconsistent with both the Operating Agreement and Assignments.

51.     The Tax Returns state that Giuliano had a fifty percent (50%) interest in JP, while the Operating Agreement and most recently, the Assignments, state that Giuliano only had a twenty five percent (25%) interest in JP.

52.     Thus, the Debtors should be denied a discharge pursuant to 11 U.S.C. § 727(a)(3).

---

[1] Giuliano's social security number and other personal identifying information have been redacted from the Tax Returns.

53.    Moreover, upon information and belief, the Debtors mutilated or falsified the Operating Agreement, from which the Debtors' financial condition or business transactions may be ascertained.

54.    Annexed hereto as Exhibit H is a copy of JP's Operating Agreement, dated August 30, 2000, within which page 4 appears to have been altered ("**Amended Operating Agreement**").

55.    Page 4 of the Amended Operating Agreement notes that Antonio's interest in JP was transferred to Giuliano.   This information, however, is inconsistent with the original Operating Agreement and Assignments.  *See* Exhibits B and C.

56.    Upon information and belief, Giuliano falsified the Operating Agreement in an attempt to mislead creditors, including VNB, into believing that Giuliano a fifty percent (50%) ownership interest in JP in order to obtain numerous loans.

57.    Thus, the Debtors should be denied a discharge pursuant to 11 U.S.C. § 727(a)(3).

### AS AND FOR A THIRD CAUSE OF ACTION

58.    The Plaintiff repeats and realleges each and every allegation contained in the paragraphs of this Complaint numbered "1" through "57" as if set forth herein at length.

59.    Upon information and belief, the Debtors have knowingly and fraudulently made a false statement on their bankruptcy schedules.

60.    Pursuant to the Debtors' amended bankruptcy schedules filed on February 21, 2013, the Debtors stated that they transferred fifty percent (50%) of stock of JP to Silvia for no consideration.

61.    However, pursuant to the Operating Agreement and Assignments, Giuliano only had and transferred a twenty five percent (25%) interest in JP.

62.     Additionally, upon information and belief, the Debtors knowingly and fraudulently made a false oath or account as to their income earned in 2011 in their amended bankruptcy schedules filed on February 21, 2013.

63.     According to the Debtors' amended schedules, the Debtors earned $36,000.00 jointly in income from businesses for the year ending December 31, 2011.

64.     Pursuant to Giuliano's 1099-Miscellaneous Income statement filed for 2011 (**"2011 Miscellaneous Income"**), it appears that Giuliano earned $199,478.16 from Precise Building & Construction, Corp. (**"Precise"**) and $41,300.00 from Northstar Construction Group (**"Northstar"**). A copy of the 2011 Miscellaneous Income is annexed hereto as Exhibit I.[2]

65.     Upon information and belief, the Debtors knowingly and fraudulently excluded this information from the petition.

66.     As such, the Debtors should be denied a discharge pursuant to 11 U.S.C. § 727(a)(4) because the Debtors have knowingly and fraudulently made a false oath or account within their bankruptcy petition.

## AS AND FOR A FOURTH CAUSE OF ACTION

67.     The Plaintiff repeats and realleges each and every allegation contained in the paragraphs of this Complaint numbered "1" through "66" as if set forth herein at length.

68.     Upon information and belief, the Debtors obtained the Note and incurred the Debt by submitting or causing to be submitted, falsified fabricated financial statements and inflated lists of assets.

69.     Upon information and belief, the Debtors made false representations to VNB with respect to their financial condition and the financial condition of the Entities.

---

[2] Giuliano's social security number and other personal identifying information have been redacted from the 2011 Miscellaneous Income.

70.    Specifically, the Debtors submitted inaccurate financial statements, valuations, and lists of the Debtors' assets.

71.    Additionally, the Debtors falsely represented to VNB that the Inn was obtaining positive cash flows.

72.    If not for such fraudulent submissions, VNB would not have entered into to the various transactions forming the basis of the Debt and/or extended time for payment of the Debt.

73.    The Debt is the result of money, property, services and/or an extension, renewal, or refinancing of credit obtained by false pretenses, false representations and/or actual fraud.

74.    Specifically, by executing the JP Guaranty, Giuliano represented to VNB that he had the authority to execute the JP Guaranty and that JP was willing to guarantee the Note, nether representation was true.

75.    Moreover, the Giuliano represented to VNB that construction of the Woodbury Property was nearly complete, and that he would be receiving between $400,000.00 and $500,000.00 in net proceeds from the sale.

76.    To date, the Woodbury Property has yet to be sold and upon information and belief, is still under construction.

77.    But for such fraudulent submissions, VNB would not have entered into to the various transactions forming the basis of the Debt and/or extended time for payment of the Debt..

78.    Thus, the Debtors should not be discharged from the Debt pursuant to 11 U.S.C § 523(a)(2)(A).

## AS AND FOR A FIFTH CAUSE OF ACTION

79.    The Plaintiff repeats and realleges each and every allegation contained in the paragraphs of this Complaint numbered "1" through "78" as if set forth herein at length.

80.    Upon information and belief, the Debt is a result money, property, services and/or an extension, renewal, or refinancing of credit obtained by use of materially false statements in writing pertaining to the financial condition of the Debtors and the Entities, which statements the Debtor caused to be made or published with the intent to deceive VNB.

81.    VNB reasonably relied on such materially false statements when entering into the Note.

82.    Specifically, Giuliano submitted written statements to VNB that construction of the Woodbury Property was nearly complete, and that he would be receiving between $400,000.00 and $500,000.00 in proceeds.

83.    Upon information and belief, Giuliano submitted written statements to VNB indicating that he had a controlling interest in JP and the authority to execute the JP Guaranty and that JP was willing to guarantee the Debt.

84.    Additionally, Giuliano submitted written statements to VNB that the Inn had positive cash flows in or around 2008-2009.

85.    Moreover, the Debtors submitted inaccurate financial statements, asset valuations and list of assets to VNB, and made false statements with respect to their financial condition and the Entities financial condition.

86.    Had the Debtors submitted accurate financial statements, asset valuations, and list of the Debtors' assets, VNB would not have entered into the Note and/or extended time for payment of the Debt, and thus would not have been damaged.

87.    Thus, the Debtors should not be discharged from the Debt pursuant to 11 U.S.C § 523(a)(2)(B).

**WHEREFORE**, Plaintiff respectfully prays that the Court determine that the Total Indebtedness, together with interest and attorney's fees, are non-dischargeable pursuant to 11 U.S.C. §§ 727(a)(2), (3), and (4), and 11 U.S.C. §§ 523(a)(2)(A) and (B), together with such other and further relief as the Court may deem just and proper.

Dated: Garden City, New York
        September 12, 2013

JASPAN SCHLESINGER LLP
*Attorneys for Plaintiff, Valley National*
*Bank, as successor by merger to State*
*Bank of Long Island*


By: _____
    Lindsay S. Feuer, Esq.
    300 Garden City Plaza
    Garden City, New York 11530
    (516) 393-8206
